**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| CARLOS NAVARRO RODRÍGUEZ<br><br>Plaintiff<br><br>v.<br><br>ALEJANDRO MAYORKAS, SECRETARY U.S. DEPARTMENT OF HOMELAND SECURITY<br><br>Defendant | CIVIL NO.<br><br>Age Discrimination and Retaliation<br><br>Jury Trial Requested |

**COMPLAINT**

**COMES NOW**, Carlos Navarro Rodríguez ("Navarro-Rodríguez" or "the Plaintiff"), through the undersigned counsel, and respectfully STATES, ALLEGES and PRAYS:

**I. Nature of the Action**

1. This is an action brought by Plaintiff Carlos Navarro-Rodríguez ("Navarro-Rodríguez" or "Plaintiff") against the Secretary of the U.S. Department of Homeland Security, Alejandro Mayorkas, because of the age discrimination and retaliation which resulted in Plaintiff's termination of his employment at the Federal Emergency Management Agency ("FEMA").

2. Plaintiff suffered, and is still suffering, severe economic and emotional damages as a result of Defendant's actions, as alleged herein.

**II. Jurisdiction**

3. This Honorable Court has jurisdiction to entertain this action pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 *et seq*.

4. All conditions precedent to jurisdiction under the applicable federal statutes have been

complied with.

5. On August 15, 2023, an Administrative Judge ("AJ") from the Equal Employment Opportunity Commission ("EEOC"), Hon. Fatima Lacayo, issued a "Decision and Order Granting Agency's Motion for Summary Judgment" in the EEOC Case Number 510-2022-00199X (HS-FEMA-01660-2021). See Exhibit 1. The Agency then issued its Final Order on August 24, 2023, adopting the EEOC's AJ's Decision. See Exhibit 2. Accordingly, this action is being timely filed within 90 days from the receipt of the Final Order.

6. This is the proper venue to bring this action, since the facts relating to the causes of action asserted herein occurred in this District.

## III. Parties

7. Plaintiff is a natural person, of legal age, married, and resident of Cabo Rojo, Puerto Rico.

8. Defendant is Honorable Alejandro Mayorkas, in his official capacity as Secretary of the U.S. Department of Homeland Security, with address at Washington, D.C. 20528.

## IV. Factual Allegations

9. Plaintiff was hired by the Federal Emergency Management Agency ("FEMA") as a "Local Hire" Planning Specialist in December 2017.

10. In August 2018, Plaintiff was promoted to the position of "Situational Unit Lead", also as "Local Hire".

11. "Situation Unit Lead" is another name for the position of "Planning Group Supervisor".

12. The position of "Planning Group Supervisor" / "Situational Unit Lead" for Branch IV (and/or for any other Branch) is a CORE position according to FEMA's organizational charts.

13. As a "Planning Group Supervisor" for Branch IV, Plaintiff had supervisory duties and evaluated the performance of other employees, including IM CORE employees, had a government issued credit card, supervised, evaluated and approved WebTA (payroll) for all Planning personnel including CORE employees, took courses required for top management, was part of the Branch Command & General Staff and Leadership Teams, was part of the Planning Leadership Team at the JRO (San Juan Headquarters), was responsible for delivering all Planning Products during Response & Recovery, and was a member of the Primary Emergency Relocation Group Roster, among other obligations and responsibilities that are akin to a CORE employee, and not part of the typical "Local Hires'" obligations and responsibilities.

14. At all times during Plaintiff's tenure as Branch IV "Planning Group Supervisor", he had from three to five Planning Specialists reporting to him.

15. Other than Plaintiff, there was no other "Local Hire" named to the position of "Planning Group Supervisor", and performing such duties in any Branch in Puerto Rico.

16. Plaintiff was employed for almost four (4) years, as a "Local Hire", which is very rare and irregular, because "Local Hires" are usually hired for periods from 120 days up to one (1) year.

17. At 67 years of age in 2021, Plaintiff was the oldest of all Planning sector employees, from all five (5) Branches in Puerto Rico.

18. In almost four (4) years with FEMA, Plaintiff held the top position in Planning in Branch IV (Ponce), which is the busiest and most demanding Branch in Puerto Rico.

19. Branch IV comprises the south-west part of Puerto Rico, and is the only part of the island that got hit with several earthquakes in January 2020. Therefore, there was more work to do in Branch IV than in the rest of the Branches in Puerto Rico.

20. While working at Branch IV and as a Local Hire, Navarro-Rodríguez worked for three

different disasters (DR4339 Hurricane Maria, DR4773 Earthquakes, and DR4560 Storm Isaiah). He was moved around those different disasters but was always brought back to DR4339 because he was needed there as Planning Group Supervisor. This continuous movement between different disasters is also atypical for "Local Hires".

21. Throughout his employment with FEMA, all four of Plaintiff' supervisors, either explicitly or implicitly, created an expectation that Plaintiff would stay in his position for the long term.

22. Also, during his employment with FEMA, Plaintiff saw many employees throughout the Branch being moved or promoted from Local Hires to Reservists or CORE positions without any job posting due to departmental needs and preferential treatment due to friendships.

23. Plaintiff asked why he was not given the same opportunity and he was given very unacceptable and inconsistent reasons which raised an inference of age discrimination, considering that Plaintiff was the oldest employee at the Branch (and at all Planning sector, including the 5 Branches).

24. Tony Espinoza, former Planning Chief, informed Plaintiff that the previous Planning Chief allotted positions based on "the Buddy system" (also known as "Name Requests"), including employees that did not have the competencies to the job, to fill all positions in the Joint Recovery Office ("JRO"), but Plaintiff was left out.

25. Tony Espinoza assured Plaintiff that, in January 2020, he would get additional "pins" (*i.e.*, approved positions) and Plaintiff would be moved to a CORE job. This, even though Tony Espinoza moved Odemaris Ruiz, a Reservist in another department, to the Planning Section, without posting the position and/or having the approved position ("pin"). Of course, she is much younger than Plaintiff (late 20s early 30s).

26. Tony Espinoza also moved other Local Hires to CORE positions via the "Buddy System" also known as the "Name Request" system.

27. Plaintiff was also informed by Tony Espinoza that the only open position left to be posted was specifically the Planning Group Supervisor for Branch IV, and that it would be posted no later than November, 2020. However, the position was never posted.

28. On March 23, 2021, Edgar Pellot, Planning Chief, sent an email to the Planning Department announcing a series of job announcements (postings). In said email Edgar Pellot informed that there had been only one job announcement for Planning, and that the Ponce (Branch IV) position was "pending."

29. When Plaintiff asked Edgar Pellot why management could not do with him the same that had been done with others (*i.e.*, move him to a CORE or Reservist position without the job being posted), Plaintiff was informed that "now" all Reservist and/or CORE positions needed to be posted on USA JOBS in order to be filled. However, Plaintiff kept seeing positions being awarded to younger employees while bypassing the posting system.

30. Plaintiff asked Edgar Pellot why he could not do a "Name Request" (popular way of bypassing the posting system and having the Supervisor get the employee they want without going through the interview process…and done countless of times), but Edgar Pellot told Plaintiff that he could not do that because then Plaintiff would be at a greater risk because, supposedly, if Human Resources denied the "Name Request", then Plaintiff would be disqualified if he went through the posting process later. This preposterous explanation was considered by Plaintiff as an insult to his intelligence.

31. On June 3, 2021, Edgar Pellot sent an email to Plaintiff asking him if he (Plaintiff) had applied for any of the CORE position openings that had been posted. Plaintiff answered that he had

not, and asked Edgar Pellot why would he, considering that he was still waiting for the posting of the specific position of Branch IV Planning Group Supervisor, which everyone knew was pending to be posted.

32. On June 4, 2021, Edgar Pellot called Plaintiff and explained that Human Resources had allegedly committed a mistake and had posted positions generically, even though he (Edgar Pellot) had specifically asked for the position of Branch IV Planning Group Supervisor to be posted. Plaintiff asked Edgar Pellot what was going to happen, and Edgar Pellot said that he would figure it out.

33. A few hours later, Edgar Pellot called Plaintiff and told him that he had found the solution to the situation, if Plaintiff agreed to it. Edgar Pellot told Plaintiff that he could bypass the posting system if he made Plaintiff a Reservist, instead of a CORE employee because he had the authority and did not need any approval if he went that route. Plaintiff told Edgar Pellot that, if that was the solution, then go for it and that, as Plaintiff had told other Planning chiefs, he (Plaintiff) was not interested in position titles; that as long as he (Plaintiff) kept his same job and same pay, he did not care what his title was. However, this never happened.

34. On June 7, 2021, Kathryn Schalen, from Human Resources, sent the following email to Edgar Pellot and Emanuel Rivera:

> *Good morning:*
>
> *Attached the Local Hire release package that should be used when informing a Local Hire of their release date.*
>
> *In the case of planning you have two Local Hires, as per leadership LH's should be released if they were not selected for the positions they are working for, please let us know when you will be releasing them.*
>
> *Thanks.*

35. On June 8, 2021, Kathryn Schalen sent the following email to Edgar Pellot and Emanuel Rivera:

> *Good morning:*
>
> *The following are the Local Hires that are assigned to Planning at this time:*
>
> *MUNET NEGRON, AURIA E.*
> *NAVARRO RODRIGUEZ, CARLOS*
>
> *Will they be released and if so, what will be the date?*
> *Thanks.*

36. On June 17, 2021, Edgar Pellot verbally informed Plaintiff to make sure to apply for the position of Branch IV Planning Group Supervisor as soon as he saw it because, if the position was posted after 07/31/2021, Plaintiff would have to be let go and hired back when the position was finally posted, and that Plaintiff would be chosen for the position.

37. Plaintiff immediately asked Edgar Pellot what had happened with his (Edgar Pellot's) proposal of moving Plaintiff to a Reservist position and Edgar Pellot tersely responded: "I can't do that." Plaintiff did not want to get involved in a "but you said", so he let it go for the moment. However, Plaintiff told Edgar Pellot that this was very irregular and that he (Plaintiff) knew that he (Edgar Pellot), in his position as Planning Chief, was able to do more, especially when, throughout Plaintiff's three and a half year tenure, all his supervisors had told him the same thing: "We know you have everything under control at the branch and we don't want to lose you." Plaintiff suggested that he (Edgar Pellot) take the situation to a higher level (DR4339 JFO and/or the Planning Cadre at the Region level), knowing that they would understand the irregularity of his (Plaintiff's) situation. However, Edgar Pellot said: "No, they wouldn't help."

38. Later that day (June 17, 2021), at 2:57 p.m., without alluding to their conversation earlier that day, Edgar Pellot sent the following email to Plaintiff, with a copy to Kathryn Schalen,

and others:

> *Good afternoon Carlos:*
>
> *As per our conversation today, this serves as your 30 days' notice of work separation. I really appreciate your service in the last 3 years, and I hope the best in your next adventure.*
>
> *Please sign and return to me the LH Notice Release.*
>
> *Thank you.*

39. Attached to said email (above) was Plaintiff's 30-day notice of work separation which, in pertinent part, stated that *"[e]ffective 06/17/2021, there is no longer a work requirement for the position in which you hold as Planning Specialist. This notice serves as your 30-day notice of release, effective 07/31/2021, from FEMA-DR-4339-PR*."

40. The 30-day notice of work separation incorrectly identified Plaintiff's position as "Planning Specialist", even though Plaintiff had been promoted to the position of Branch IV Planning Group Supervisor on August 2018.

41. On June 22, 2021, Edgar Pellot called Plaintiff to inform him he had good news. Edgar Pellot informed Plaintiff that his position would not be eliminated until the job posting was completed and the candidate chosen. Plaintiff asked Edgar Pellot to put it in writing, and Edgar Pellot reluctantly asked Plaintiff "why do we need to do this?" Plaintiff told Edgar Pellot that at this point he felt very uncomfortable with what was going on and did not trust anyone because everything had taken a different tone, referring to the irregular treatment received, as compared to other younger "Local Hires" who had been moved to "Reservist" and/or "CORE" positions, and multiple excuses given to Plaintiff.

42. Plaintiff waited for two (2) days and since he did not receive the conversation in writing, on June 25, 2021, at 3:25 p.m., Plaintiff sent the following email to Edgar Pellot, with a copy

to Kathryn Schalen, and others:

> *Good afternoon Edgar:*
>
> *Confirming our conversation via your phone call last Tuesday morning (06222021), you have informed me of my extension past the thirty day notice stated below until the open position in Branch IV is posted and filled.*
>
> *I know you did not feel the need in confirming the conversation in writing upon my request, but due to the nature and seriousness of the situation as it pertains to me, I feel it to be necessary. As far as I'm concerned, the only official communication on my record is my thirty-day notice that took me completely by surprise.*
>
> *I really appreciate your efforts in doing your utmost in keeping me onboard as Planning Group Supervisor for Branch IV as you've always let me know.*

43. On June 25, 2021, at 3:46 p.m., Edgar Pellot replied as follows to Plaintiff's email, above, with a copy to Kathryn Schalen from Human Resources, and others:

> *Good afternoon Carlos: The July 31 release date is set if position is advertised and filled in the time frame. If position is not filled, I will be requesting an extension for 30 more days. I am confident that the HR team will complete the process in a timely manner.*
>
> *Remember to check usa jobs on a regular basis for job postings and good luck.*

44. An extension of the contract of a Local Hire requested by a supervisor has never been denied by Human Resources.

45. On July 5, 2021, at 1:18 p.m., Plaintiff sent the following email to Edgar Pellot, with a copy to Kathryn Schalen, and others:

> *Good morning Edgar:*
>
> *After a thorough analysis and looking at the inconsistencies of HR's hiring practices throughout the times and the irregular series of events and lack of transparency that has occurred throughout the filling of my position, I have come to the conclusion that, everything considered**, this is a clear case of age discrimination towards my person.***

This email (above) constitutes protected conduct under the applicable retaliation statute.

46. On July 6, 2021, at 8:22 p.m., Edgar Pellot sent Plaintiff the following email, with a

copy to Kathryn Schalen, and others:

*Thank you for your email, we want to assure you that the decision to release Local Hires is only based on the type of appointment. Local Hires are appointment for 120 days and extended up to 360 days. In the case of Recovery of Maria and because of the magnitude of the event, the agency allowed Local Hires to be extended more than 360 days. This is an uncommon practice in the agency. When the hiring started the first positions approved for Planning where (sic) at the JRO, and name requests were submitted for those positions. During the re-alignment to a Long Term Recovery Office, planning got the approval to hire a CORE position at Branch IV. Positions will be posted thru USA Jobs to keep a fair and standard recruitment process for all employees. The position for Branch IV will be posted in the next couple of weeks, HR is working with OCCHCO to prepare the job announcements.*

*You have been an integral part of our Planning team, working out of Branch IV and the insinuation that your release is based on other than your type of appointment has come as a surprise to us. We encourage you to continue applying for any position you understand you may qualify for, while the position is posted. Remember all employees have the resources of Alternate Dispute Resolution and Office of Equal Rights that they can use. Attached you will find a flyer with the resources available to all employees.*

*If you have any questions, please feel free to reach out Kathryn Schalen (202-714-3517) or myself.*

*Thanks.*

47. On July 9, 2021, at 9:48 a.m., Plaintiff sent the following email to Edgar Pellot, with a copy to Kathryn Schalen, and others:

*Good morning Edgar, and thank you for your response.*

*In the spirit of transparency, I will be very clear.*

*The explanation on the mechanics on how a Local Hire Position is managed is irrelevant to my issue. I know very well what the Policy on Local Hire is. The issue here is how, in many cases, Local Hire positions have been managed in an inconsistent and irregular manners in terms of getting them on board (I'll spare you the details for now). But more importantly, my issue is how my status as FEMA employee has been managed throughout the years and the inconsistent reasons of why I am still a Local Hire after three and a half years which include being promoted to Planning Group Supervisor for Branch IV. Which, by the way, was given to me with the expectancy of (How a previous Planning Chief put it) me staying on board until Branch IV closes. Not only have [I] done an exceptional job as PLGS, But I have also been equally*

*successful in moving the Branch forward as a team throughout the entire organization. Up to date, I have spoken to you and other previous supervisors about my status and the need for it to change (knowing very well the policy on Local Hires) and when it will change, and I have received doubting and unbelievable reasons anywhere from the "incompetency of the Human Resources Department" to blaming previous Planning executives in failing to take action on the matter.*

*In your particular case, in the numerous occasions we have discussed my situation as a Local Hire, you have agreed that moving me to a Core or Reservist position would be the f[air] and ethical thing to do. Why you haven't done it as Planning Chief for DR4339 Puerto Rico, I fail to know. I do feel a total lack of honesty in what you have been telling and I feel you've been trying to drag this along with many promises until my time runs out [o]n July 30. In fact, now you write that my position will be posted in the next two weeks, when in fact it was announced in a Planning meeting early last year that the only position left to complete the Planning Team was my position and that it was to be posted no later than Thanksgiving of last year and the position would be posted specifically for Planning Group Supervisor for Branch IV, Ponce. So you see why I'm not too enthused. These two past letters that you have sent me, fall very short to the essence of all the conversations we have verbally had. And this is not speculation by any means. My 20+ years as a Human Resources executive from HR Supervisor to Senior Vice President at the Local, National and International level has given me the experience to deal with these types of situations and be effective in keeping a healthy balance between the organization and its' employees. I never thought I would be on the other side of the line.*

*In closing for now, I am surprised that you are surprised. You shouldn't be, based on the conversations we've had in the past and the fact that my situation in keeping me on board on a Core position has been unreasonably dragged out with no apparent reason. I have met with ADR for over an hour and the meeting just confirmed my restlessness with my situation. Therefore, I reiterate my disappointment and unsatisfaction on how my situation as an employee has been managed in such an irregular and untruthful manner and I am in the process of submitting a claim to ERO for discrimination.*

*If you have any further questions or with to further discuss, I am always at your service.*

*REMEMBER FEMA's CORE VALUES: Compassion, Fairness, Integrity and Respect.*

48. On July 22 and 23, 2021 Plaintiff received two different emails from Human Resources informing him that he needed to *Demob* on July 30, 2021. Plaintiff responded to both emails with copy of Edgar Pellot's email informing Plaintiff of his extension until the position was posted.

49. On July 23, 2021, at 10:33 a.m., Edgar Pellot sent Plaintiff and Fernando Fernández the following email, with a copy to Kathryn Schalen, and others:

> *For clarification purposes, what I said during the conversation was that I would request approval from HR to get an extension. However, that extension was not approved by OCCHCO instructions. For that reason, all our Local Hires have been informed of their release date. As stated in the email of June 17, 2021, you received a 30 days of LH Notice Release and as subsequently informed, your last day of work will be July 31, 2021.*
>
> *As always, we appreciate your commitment to the mission during this time in PR.*

50. In this email (above), Edgar Pellot retracted from his agreement and broke his promise to Plaintiff that he would request a 30-day extension if the position was not posted and filled by July 31, 2021, by using the excuse that "OCCHCO did not approve the extension".

51. However, Kathryn Schalen, Human Resources Supervisor, was asked "[h]ow was the decision made to provide the [Plaintiff] a Release Notice?" and her answer under penalty of perjury was: "That would have to be answered by Edgar Pellot."

52. On Monday July 26, 2021, Plaintiff introduced himself to Andrés García, Deputy Federal Disaster Recovery Coordinator (Second in Command in the JRO), and requested a few minutes of his time to discuss the situation about his job termination

53. The conversation between Plaintiff and Andrés García took place on July 29, 2021. Plaintiff explained the situation to Andrés García, but the latter decided to do nothing.

54. On July 30, 2021, Plaintiff sent Andrés García the following email, with a copy to Edgar Pellot and Emanuel Rivera:

> *Good afternoon Andrés:*
>
> *Thank you for getting back to me yesterday regarding your decision on my termination and the loss of my job. I appreciate you being candid in believing in my narrative of the series of events that brought me to losing my job, however, I am very disappointed in your decision of not taking any action on reversing the decision because, as you*

*stated, "it wasn't enough" for you to want to request a reversal. I don't think any case that is based on age discrimination and retaliation should be taken lightly and not determine what "enough" is. You keep referring to the job posting system and the fact that I didn't look for other opportunities as the issue, when in fact the real issue is that I wasn't given equal opportunity and treatment that I am entitled to under the law that has been given to countless other employees that I am aware in Branch IV.*

*As you are well aware, I have submitted a claim with ERO regarding age discrimination (which I will be adding retaliation as a result of). It's a shame that Top Leadership condones this type of behavior, which obviously is not the first time.*

*Lots of success!*

55. Plaintiff was terminated effective on July 31, 2021.

56. By early and mid-2021, Branch IV was the busiest Branch in Puerto Rico, and the mission was not complete in Branch IV.

57. After Plaintiff's discriminatory and retaliatory termination, his duties as Branch IV Planning Group Supervisor were distributed among the Planning Group Supervisors of the other Branches in Puerto Rico, all substantially younger than him.

58. There is an irregular recruiting system in FEMA, known as "Name Request" or "the Buddy System", through which individuals get hired to and/or promoted to CORE and/or Reservists positions without job postings or any competitive process.

59. Among many others, the following individuals were "Local Hires" who were moved to CORE and/or Reservists positions without any job postings, via "the Buddy System", also known as "Name Request."

Jerry Rodriguez - Moved from Local Hire to CORE;

Nestor Cebollero - Moved from Local Hire to Reservist;

Sandra Aragonés - Moved from Local Hire to Reservist;

Joanette Nazario - Moved from Local Hire to Reservist;

Roberto Palmieri - Moved from Local Hire to Reservist;

Luis Colón - Moved from Local Hire to Reservist;

Ricardo Tormos - Moved from Local Hire to Reservist;

Vilma Criado - Moved from Local Hire to Reservist;

Palmira Torres - Moved from Local Hire to Reservist;

Jose Diaz - Moved from one Local Hire position to another Local Hire position and kept there (was not terminated because he was a Local Hire);

Anibal Rivera - Terminated as Local Hire and rehired as Local Hire after Complainant's termination;

Yaneiza Santiago - Instead of being terminated as a Local Hire, was moved to CORE job at the JFO (in San Juan) without any posting, with no prior experience, and with the benefit of working from Ponce to relieve her of travelling to San Juan;

Kimberly Rosario - Moved from Local Hire to CORE position at the JRO without any posting for personal reasons not job related;

Whole Logistics group Moved from Local Hire positions to Reservist positions;

Japhet Cintrón - Moved from Local Hire to Reservist;

Alberto Quiñones - Moved from Local Hire to Reservist;

60. All these individuals mentioned above are substantially younger than Plaintiff.

61. After Plaintiff's termination, his duties were distributed to the following individuals, all substantially younger than him, and after he was told that his job was no longer necessary, as per the Release Notice:

Baltazar Torres Corrada

Sonia Jordán

Doris Ortiz

Linette Riquelme

62. On July 9, 2021, Plaintiff initiated contact with an Equal Employment Opportunity (EEO) Counselor.

63. On July 27, 2021, FEMA notified Plaintiff of the conclusion of EEO counseling and of Plaintiff's right to file a formal complaint.

64. On August 9, 2021, Plaintiff filed a formal complaint before the EEOC, complaining of age discrimination and retaliation.

65. On March 24, 2022, Plaintiff requested a hearing before a EEOC AJ.

66. The claims at issue before the EEOC AJ were the following:

Whether Complainant was discriminated against based on age (1954) when:

1. On June 17, 2021, Mr. Edgar Pellot (Planning & Analytics Section Chief) issued Complainant a 30-day Release Notice from Complainant's position as Planning Specialist (FEMA-4339-DR-PR) effective July 31, 2021; and

2. On or around July 29, 2021, Mr. Pellot retracted a verbal agreement for employment when Complainant told him his action was discriminatory and due to his age.

And whether reprisal (no prior EEO activity reported) was taken against Complainant when:

1. On or around July 29, 2021, Mr. Pellot retracted a verbal agreement for employment when Complainant told him his action was discriminatory and due to his age.

67. On August 15, 2023, an AJ from the EEOC issued a "Decision and Order Granting Agency's Motion for Summary Judgment" in the EEOC Case Number 510-2022-00199X (HS-FEMA-01660-2021). See Exhibit 1. The AJ concluded that Plaintiff was not discriminated against because of his age, nor retaliated against. Id. The Agency then issued its Final Order on August 24, 2023, adopting the EEOC's AJ's Decision. See Exhibit 2.

68. This Complaint is being filed within the 90-day period established in the Final Order.

## V. Causes of Action

### A. First Cause of Action – Age Discrimination under the ADEA

69. Plaintiff re-alleges all previous paragraphs as if fully alleged herein.

70. The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

71. In this case, there is no controversy that Plaintiff established his *prima facie* case of age discrimination. This was recognized even by the EEOC AJ.

72. Defendant's alleged legitimate, non-discriminatory reason for Plaintiff's termination is that all "Local Hires" were being released and Plaintiff was a "Local Hire". According to Defendant, Plaintiff was a "Local Hire - Planning Specialist", and all "Local Hires" were released and, therefore, there was no discrimination. This simple explanation is weak, inconsistent, implausible and contradictory in many aspects. For example:

1. As admitted by FEMA's Human Resources Supervisor, Kathryn Schalen, "Local Hires" are usually appointed for 120-day periods, and can be extended up to one (1) year depending on the Agency's needs. However, Plaintiff was employed for almost four (4) years.
2. Plaintiff's position was not Planning Specialist, but, rather, Branch IV Planning Group Supervisor which, according to FEMA's organizational chart is a CORE position.
3. Even though Plaintiff held the Branch IV Planning Group Supervisor position as a "Local Hire", which is irregular and anomalous by itself (because it is a

CORE position), his responsibilities were also those of a management CORE employee, not of a Local Hire.

4. An irregular recruiting system (or hiring practices) exists and/or existed at the time when Plaintiff was employed by the Agency, known as "Name Request" or "the Buddy System", through which individuals get hired to and/or promoted to CORE and/or Reservists positions without job postings or any competitive process.

73. Plaintiff established that Defendant's alleged legitimate, non-discriminatory reason for his termination was a pretext. Minimally, the EEOC AJ had to allow the case to go to a full evidentiary hearing, instead of granting Defendant's motion for summary judgment.

74. Plaintiff was discriminatorily terminated because of his age, because he was treated differently than other "Local Hires", all substantially younger than him, that were moved to CORE and/or Reservist positions without going through the job posting process, including up to the date of Plaintiff's termination, via "Name Request system" aka "the Buddy System". Instead, Plaintiff, who in practice did occupy a CORE position and did have CORE position duties, was terminated "like all other Local Hires".

75. As a result of the Defendant's age discrimination against Plaintiff, the latter has suffered, and will continue to suffer, emotional and economic damages in excess of $750,000.00.

**B. Second Cause of Action – Retaliation under the ADEA**

76. Plaintiff re-alleges all previous paragraphs as if fully alleged herein.

77. The ADEA's anti-retaliation provision states, in pertinent part:

> It shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section[.]

29 U.S.C. Sec. 623(d).

78. Plaintiff was retaliated against once he complained, on July 5, 2021, that he was being discriminated on the basis of his age, because after Plaintiff complained, Edgar Pellot retracted from his agreement that he would request a 30-day extension of Plaintiff's employment, to allow Human Resources to post and fill Plaintiff's position, and that Plaintiff would be selected for the position.

79. As a result of Defendant's age-based retaliatory termination, Plaintiff has suffered, and will continue to suffer, severe emotional and economic damages in excess of $750,000.00.

## VI. Relief

**WHEREFORE**, Plaintiff prays to this Honorable Court to:

1. Grant this Complaint in its entirety;

2. Order Defendant to make Plaintiff whole by granting compensation for his emotional and economic damages in the amount of not less than $750,000.00.

3. Award Plaintiff punitive damages.

4. Award Plaintiff the costs of this action, together with reasonable attorney's fees.

5. Award Plaintiff pre judgment interest.

6. Grant Plaintiff such other relief as this Honorable Court deems appropriate and proper.

A jury trial is requested.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on November 21, 2023.

**s/ Andrés C. Gorbea-Del Valle**
Andrés C. Gorbea-Del Valle, Esq.
USDC-PR Bar No. 226313
PO Box 195191, San Juan, PR 00919
Tel. (787) 217-2234
andres_gorbea@yahoo.com